If it please the court, I'm Mary Lou Hilberg, and I'm here for Mr. Busby. Justices, I am here because of two evidentiary shortcuts that allowed the prosecution to convict on a lower standard of proof. It diluted the beyond-the-reasonable-doubt standard that is the hallmark of criminal justice in this country. The first evidentiary shortcut is from CALJIC 2.15, which is no longer used and is not the, quote-unquote, slight corroboration is no longer used in the CALCRIM instructions in California. And the slight corroboration makes this instruction sound like if you have evidence of recently possessed, recently stolen property, plus your, quote-unquote, slight corroboration, it operates as a judicial stamp of approval saying this is proof beyond a reasonable doubt. It's a very specific instruction. Kennedy It doesn't say it is, does it? It says it may be. Busby I'm sorry. Sorry, I couldn't hear you. Kennedy Doesn't it say it may be proof beyond a reasonable doubt? Busby It does, but it operates like a judicial finding. It tells the jury that the court thinks this is really important, and it pushes it towards beyond a reasonable doubt. Kennedy Well, isn't that really important? If you find somebody with recently stolen property, anybody would make some inference from that as to his involvement in the crime. Busby You're absolutely right, Justice. But the problem here is that it only requires slight corroborating evidence. The law is really well established from Barnes and the California cases that are decided that all say that, yes, possession of recently stolen property raises an inference of involvement in the theft. But the question that I'm trying to argue is that it's the requirement for only slight corroborating evidence, such as was discussed by the Fifth Circuit in United States v. Gray, that that's what makes this instruction constitutionally deficient. Kennedy Wouldn't it depend a little bit on the facts of the case? In this case, your client found it very hard to explain how he had come into possession. I mean, even if we took your point abstractly, it doesn't seem to work very well for him. He started to lie about it, as far as I can see, and, of course, he got into all kinds of trouble. So it wasn't exactly as though there was just a slight corroboration. He just couldn't explain how he had the cell phone in his possession. I would have to agree with the Court that his explanation of how he came into possession of the cell phone is not the most credible I've read in 30 years of practicing law. But it's still – I don't really have too much more to say on that one particular issue that I haven't said in the briefs. But if it pleases the Court, what I'd really like to talk about is the presumption as applied to assault crimes, because that is where I think it really falls apart. Well, you know, if you apply it to the robbery and the robbery was an armed robbery, why wouldn't the – assuming the presumption's all right and, therefore, you can use it to show he committed the robbery, why can't you use it to show that he committed an armed robbery? Well, the – If the person who committed the robbery was armed. But the assault is a separate offense. And the – it's not broken apart as the robbery, the theft, plus the force or fear and the taking. It's not just one element of the robbery. It's a separate offense. And it's a separate offense that really has nothing to do with theft, per se. It's not – it's not – we're not trying to differentiate the two elements of robbery. We're saying this is a separate offense of the assault. And there was – there were problems in this case in that no one could identify my client. No – none of the robbers wore masks. But to the extent that that goes to relieve him of the assault problem, it would also relieve him of the robbery. Can't they – how can you separate the two in this case?  If the robber has committed the assault and you allow that to be used with respect to the robbery, what harm does it do to say, you know, it also shows you committed the assault. They were the same people. But it's reasonably probable that my guy could have been on the outside as a lookout. He was in a separate car. He didn't have any of the proceeds from the robbery except for this one cell phone. He didn't have the jewelry. He certainly didn't have the $14,000. So it is reasonably probable, or at least credible, that he was on the outside. And then it becomes a question of whether or not the assaults were a natural and probable consequence of the robberies, separate and apart from the robberies, and the jury wasn't instructed on that. So they didn't make that finding. It's whether or not you can take this 2.15 presumption and apply it to any crime, whether you can apply it to – and this court in La Jolla said, no, you can't. It was an 1108 issue about whether or not you could apply prior – So would he have been responsible for the assault if he had been sitting in the car? Not unless the jury found it was a natural and probable consequence. And the jury was not instructed on that. If someone goes in to commit a robbery, it doesn't mean that they're necessarily going to commit a separate assault, too. And that's a question that the jury has to find. It's a factual question that the fact finder has to be instructed upon, and they weren't. You objected to the fact that they weren't instructed on that? You know, Justice, I would have to look, because I just don't know off the top of my head whether or not trial counsel did or did not object to the lack of instruction. But the California courts have made it clear under Penal Code Section 1259 that it is the duty of the trial court to instruct on all relevant principles of law that affect a person's substantial rights. And I would strongly suggest that aiding and abetting instruction would fit in that category. Okay. You want to save your last two and a half minutes? Thank you. Thank you. Good morning. May it please the Court. Justin Reilly on behalf of the Warden. Initially, I was preparing for the case last night, and I pulled up this Court's docket sheet. I saw this Court's April 3rd order granting, as I understand it, the defendant's right to remain in the United States. I apologize that I didn't submit a certificate of appealability on the second issue. I apologize that the court is not aware of that. Well, we'll give you an opportunity to submit a brief on that question. We've now answered our question. We were wondering why the State didn't submit. But now you've answered it. I can't explain why, but our office's document system doesn't have any record of us having the document. So it is in our possession now that I have seen it on the docket sheet, but I am prepared to argue it as well. Do you have ‑‑ I mean, there is some transition period here with electronic docketing as well. Yes. And I'm wondering if your office has transitioned to that yet. You know, I can tell you from personal experience that I have not gotten several things, not gotten personally several things from the court, including schedules and such. I can tell you the same thing. I'm not saying the court didn't send them. That's not what I'm saying at all. I just want to say that your office can contact our clerk of court, because they've been trying to assist offices, particularly institutional offices, where you have to make some big changes in how this system works. So we're all working through it. I'm aware of many different meetings that have happened between our office and this office. Thank you. The first issue is, in my opinion, just a run-of-the-mill interpretation of an instruction issue. Did the word slight affect the prosecution's burden of proof? Of course, a clearly established Supreme Court precedent tells us that we view that instruction in light of the other instructions. We might tell you that slight means substantial if you've been here yesterday. I like that. I would like to start there, if I may. Secondly, I'm going to refer this court to several excerpts of the record. Excerpts of the record of volume number one, page 12. After the trial court read the information to the jury, the court then said, quote, the defendant has pleaded not guilty, which plea puts in issue every material allegation of the information in charge. Moving on to excerpts of record number 14, the jury was instructed to consider the instructions as a whole, and each in light of all the others. Excerpt of record number 18. Remember, this is a permissive inference instruction based on circumstantial evidence. So the court in Calgic number 2.00 defines what permissive inferences are for the jury. Circumstantial evidence is evidence that if found to be true, proves a fact from which an inference of the existence of another fact may be drawn. An inference is a deduction, et cetera, et cetera. Excerpts of record number 19. Each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. The trial court defined what circumstantial evidence was in terms of an inference, and then immediately told the jury every fact must be proved beyond a reasonable doubt, necessary to establish the defendant's guilt based on circumstantial evidence. I move on. Excerpts of record number 35 is the standard reasonable doubt instruction. The jury was again instructed that they must find Petitioner guilty beyond a reasonable doubt. The very next page, excerpts of record number 36, is not one of the standard instructions usually given in a packet. It again repeats the reasonable doubt instruction in terms of identity. And this inference instruction, this permissive inference instruction, was all about identity here. The jury is again instructed the burden is on the people to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which he is charged. Finally, on excerpts of record number 45 with regard to the assault, in order to prove this crime, each of the following elements must be proved. I believe it's now clear that taking the instructions as a whole, slight, does nothing to the beyond a reasonable doubt standard of proof. This court in Mejia v. Garcia, which Busbee's counsel cites in her reply brief, was actually not about finding error in an instruction as the parties had conceded error. It was a case about reading the instructions as a whole and not letting a technical deficiency on the face of just the instruction cause the court to find that there is constitutional error. Instead, it must read the instructions in light of the others and then determine whether or not there was a reasonable likelihood that the jury had interpreted the instruction in an unconstitutional manner. Unless there are any other questions on that particular issue, I'd like to move on to number two. This issue is basically whether or not permissive, excuse me, the permissive inference instruction applies to assault. The assaults here were part and parcel of the robberies. They were the manner with which Busbee acquired the cell phone, the stolen property. But what do you need for his assault? Is everybody involved in the robbery in any way necessarily guilty of assault? The district court found that everybody had a gun. I'm sorry. Everybody was involved in the robbery. How could the district court find that? The district court reviewed the record. You mean after the verdict? The State. Oh, this is ‑‑ I'm sorry. This is a ‑‑ It's a direct appeal from the State. Yes, yes. Okay. So the district court found that everybody had a gun and everybody participated in the robbery. So there was no way to distinguish between the defendants. Like I said, this was a case about identity. None of the eyewitnesses could identify Busbee. So the stolen cell phone and the inferences drawn therefrom were the basis of establishing him as one of the robbers. Does this go to harmlessness, then? Which? The question of whether the instruction is proper as to people who may have been involved in the robbery but not in the assault. Well, basically, Barnes and Ulster County tell us, and I'm quoting, if there is no rational way the jury could make the connection permitted by the inference, or stated another way, quote, the instruction is constitutional if it can be said with substantial assurance that the inferred fact is more likely than not to flow from the proved fact on which it's made. Well, how can ‑‑ how could the jury know that, you know, everybody was involved in the actual assault based on the inference? The jury doesn't have to decide. The inference would show that he was involved in the robbery. But how does the inference show ‑‑ how does mere possession show that he's involved in the assault? The assault was part and parcel with the robbery. It was using a gun to separate the victims from their property. Absolutely. If everybody used a gun and everybody was involved in the actual occurrences in the theater or the whatever, then I can understand how the inference could be shifted from the fact that everybody who's a robber is also guilty of assault. But is there ‑‑ did the jury have to find that the inference itself would not show that mere possession means you're ‑‑ the fact that you're involved in the robbery doesn't necessarily show you're involved in the assault unless there's evidence that everybody was involved directly in the robbery. I mean, to prove that he got the possession of it immediately upon the completion of the robbery doesn't show that he was inside at the time. If you convicted somebody on the basis that he was involved in the robbery, that would not in itself allow you to convict him of having been inside committing the assault. That's true. The evidence tended to show that each of the three robbers were inside and each of the three robbers had a firearm. But how do you know there wasn't a fourth robber in the car who got the property? There was no evidence of anybody staying in a car. Well, but if you convict somebody just on the fact that he ‑‑ you draw from the fact that he has the property. Plus the fact that he denied it, told a lot of stories about it. Yeah. Which would be enough to convict him of the robbery. If it is enough to convict him of the robbery, then the jury would have necessarily found him guilty of the assault. But it doesn't show that he wasn't ‑‑ didn't get his property by being in the car. Sure. And it doesn't prove that he didn't get his property by having somebody hand it to him in the jack‑in‑the‑box parking lot, like he said. No, but you can draw the inference that he did the robbery. There are many different inferences. But what we need to look to is if there's no rational way the jury could make the inference based on Ulster County. And here we have sufficient evidence for the jury to have made the inference. Now, tell us again, what's the rational inference that he was actually on the scene holding a gun on the victim? Sure. Each of three robbers were seen by several of the victims entering the drive‑in movie theater. How many robbers are on trial at this trial? At this particular trial, one. And how do we know there were only three? The eyewitness accounts, and I believe there were four eyewitnesses. But Judge Reinhart said maybe there was a fourth outside. There was no evidence presented to him there being a fourth outside. There was a ‑‑ one of the victims was in his own vehicle in the parking lot, and there was no testimony from that victim that there was any other person in the parking lot or any other vehicle in the parking lot or that there was a vehicle at all for the robbers to get away. I take that one back. I can't remember if there was any testimony as to what vehicle the robbers drove. But there was no testimony as to any extra people. Well, how did they arrive? We don't know? I don't have those facts in front of me. I don't know if they were even presented. The story starts with one of the victims exiting the drive-in movie theater to, I believe, turn off a projector upstairs, and one of the robbers was there waiting behind the door. Were the other two robbers ever caught? I don't know. They were not part of this case. So the inference was ‑‑ I see I'm out of time. Oh, go ahead. So the inference was these three robbers entered the drive-in movie theater. All were armed with weapons. Each one of them threatened harm on the victims to separate them from their property, including jewelry, a cell phone, and cash. And Busby was recently thereafter found in the possession of both a loaded firearm, which matched the description of the firearms used in the robbery, and a stolen cell phone. The surrounding circumstances were that Mr. Busby fled from the police. He tried to reach for his weapon. He tried to alter his appearance by cutting off his clothing and altering his clothing. And I believe he vaguely matched a description of the robbers were African American, and he's African American. The jury had all the surrounding circumstances to draw this inference, and they were specifically ‑‑ What was the evidence about the firearm on the seat resembling a firearm that was used? On the scene, I believe the victims described one or maybe more of the victims described the weapons as black semiautomatic pistols. I'm not quoting. I'm paraphrasing. Okay. And that was the weapon found in the car with Mr. Busby as he was stopped by the law enforcement. And to sum up, the jury was specifically instructed that the inference must be based on evidence proved beyond a reasonable doubt and that each element of the offense must be proved beyond a reasonable doubt. Thank you. These were consistent with the instruction. Thank you. Thank you, Judge. Thank you, Your Honors. Really briefly, counsel duly cites all the references to beyond a reasonable doubt in the record, and we don't dispute that. But the devil is in the details. If there were just general rules of law that applied unilaterally, we could get through law school in six months and the bar exam would take an hour. It's the exceptions, the exceptions on the exceptions on the exceptions, and when they apply that drives us all nuts. And the rule of law is very clear that in instructions, the specific controls over the general. So, yes, they were generally told each and every element has to be proven beyond a reasonable doubt. However, there is this inference that gives the prosecution a leg up, and that's what we're complaining about. As far as the record goes, there were four victims and there were four different accounts of exactly how many people were there. It varied between two and three robbers. Somebody said three. Other people said two. We know there were two men with guns. It's unclear as to whether the third person, if there was a third person, had a gun. But Mr. Busby didn't match the description of anyone. There was a big guy in a puffy black coat. That wasn't him. Mr. Busby was about 5'10". This guy was about 6'1 or 6'2". There was a short guy that wore a long red baggy shirt. Mr. Busby had a red T-shirt on, but he wasn't the short guy stood behind Mr. Peretti, who was 5'7", and was shorter than Mr. Peretti. Mr. Busby's 5'10". And then there was the short guy and then the guy with the baggy red shirt had cornrows, and Mr. Busby didn't have cornrows. The only place where he altered his physical description is he tore off his pants like they had been shot in the thigh by the officer when he ran from him. There were seven fingerprints lifted from the scene. None of them matched his. The assaults took place in different parts of the drive-in movie theater. They weren't all in an open area. They were different offices. And there were separate defendants involved with separate victims. And everybody had a different account of exactly what happened. Everyone was inside the drive-in theater building. I haven't been to a drive-in for many moons, so I'm not sure exactly what it looked like, but I know there was some kind of building that everybody was inside. And they had relatively vague descriptions of a gun. It's very common in robberies that there's a gun focus, and they know it's a gun, and they can tell you what color it is, but there's not much more than that. There were two cars involved in this robbery. There was a white car that my guy was in, and he was the only person in that car, and then the black car that the CHP saw them playing tag with on the freeway. And presumably the black car had whoever else was involved in the robbery. They were never caught, as far as I know. They were never identified, as far as I know. They got away with the $14,000 and the jewelry, and there was another cell phone taken, too. And lastly, but not leastly, Urlser and Leary both say that the court has to find a substantial assurance that there's a connection between the presumed facts and the found facts. And I'm not arguing that there isn't a substantial assurance with a theft-related offense, but the courts in California now, the California Supreme Court and this Court, have said you can't push it that much further to a non-theft-related offense in this particular kind of situation. So unless the court has to... That would be an odd theory that he was the getaway driver if there were two cars and he was the only one in his car. A lookout driver. Somebody had to be looking out on the outside so that they didn't have unexpected and uninvited visitors. This was really perhaps just curiosity, but you thought about it. Why would you suppose they were playing tag, the two cars? An excess of adrenaline and stupidity. Or drugs. Drugs. Knowing who my client is, that's a reasonable probability. All right. All right. Thank you both very much. It was an interesting argument. And the court will take a brief morning recess.
judges: Reinhardt, Noonan, McKeown